S11A1250. CAMMER v. WALKER.
(719 SE2d 437)

HUNSTEIN, Chief Justice.

We granted David Eugene Cammer a certificate of probable cause to appeal the denial of his petition for a writ of habeas corpus

to consider whether his trial counsel rendered ineffective assistance in his consultation with Cammer about a pretrial plea agreement offer. Because trial counsel's consultation fell within the broad range of reasonable professional conduct, we affirm.

Following a trial in April 2001, a Chatham County jury convicted Cammer of armed robbery, kidnapping with bodily injury, hijacking a motor vehicle, aggravated assault, and possession of a firearm during the commission of a felony. The evidence at trial showed that in July 1998, Cammer, who was 19 years old, and three co-defendants plotted to steal a car. Cammer purchased a gun, accompanied a co-defendant to a Ford dealership, and while the two were test driving a vehicle, pulled the gun on the salesman who had accompanied them and ordered him to empty his pockets. Cammer's co-defendant drove the car down a dirt road, where everyone exited the vehicle. The salesman fled, and as he did so, Cammer and his co-defendant each fired the gun. Pellets from the gun's bullets entered the salesman's head, arm, leg, and back.

The trial court sentenced Cammer to life in prison for kidnapping with bodily injury, concurrent terms of twenty years for armed robbery and aggravated assault, a concurrent term of fifteen years for hijacking a motor vehicle, and a consecutive term of five years for possession of a firearm during the commission of a felony. Cammer's convictions were affirmed on appeal. *Cammer v. State*, 263 Ga. App. 277 (587 SE2d 656) (2003). Cammer did not accept a pretrial plea agreement offered by the State under which he would have been sentenced to twenty years, ten to be served in prison. Cammer's three co-defendants accepted similar offers.

The record reflects that Cammer's father hired trial counsel's law firm in early 1999 following Cammer's arrest. Trial counsel secured Cammer's release from jail on bond, and Cammer was permitted to live with his father and stepmother in South Carolina while he awaited trial. Cammer and his father met with trial counsel when they traveled to Savannah for Cammer's regular court appearances.

At the evidentiary hearing below, Cammer's father testified that, to his knowledge, Cammer never met with trial counsel alone. According to Cammer's father, trial counsel mentioned the possibility that Cammer could get juvenile boot camp because he had never been in trouble before. Trial counsel told him "they would try to go that route and then it changed." Cammer's father testified that no one told him that his son would receive a life sentence if convicted. When trial counsel relayed the State's plea offer, Cammer's father did not want Cammer to take it. Cammer later told him and his wife that he wanted to accept the offer. But Cammer's father "just didn't think [Cammer] should spend years in jail" and advised Cammer

"[t]o go to the jury trial and see how it came out."

Cammer testified that he was never told that he could receive a life sentence if convicted. He conceded that he was presented with the State's offer but stated that he did not discuss it with trial counsel without his father present. Cammer stated that he told his father and stepmother that he wanted to take the State's offer. He testified that trial counsel never directly asked him what he wanted to do; however, he admitted that he never told trial counsel that he wanted to plead guilty.

Trial counsel testified that prior to trial, he interviewed Cammer, spoke with Cammer's family, obtained police reports, and received discovery and shared it with Cammer. He also discussed with Cammer the weight of the State's evidence against him and communicated the State's plea offer to Cammer. Trial counsel was "sure" that he discussed the possible range of sentences with his client. He told Cammer that, if convicted, he would be sentenced to ten to twenty years or life for armed robbery, but trial counsel could not specifically recall his advice on the other charges. Trial counsel denied discussing boot camp with Cammer's father. He stated that another attorney from his firm who did not practice criminal law had met with the Cammers early on and that he had "heard" that his colleague advised the Cammers that boot camp was a possibility. Trial counsel did not say when he had heard this or whether he believed it was true.

According to trial counsel, during meetings, Cammer's father did all of the talking and was "adamant" that Cammer was not going to plead guilty and serve ten years in prison. Trial counsel believed that he had a duty to consult his client personally concerning the State's offer but thought he was doing so during meetings with Cammer and his father. At the time, he did not think about speaking with Cammer alone since Cammer was present for all of the conversations. Trial counsel stated that he "probably" had an obligation to meet with Cammer alone and, in hindsight, does not believe it was Cammer's decision to go to trial. But when asked during redirect examination whether Cammer ever indicated that he wanted to accept the plea offer, he responded: "By his silence he's indicating to me that he did not."

Cammer's sole claim in his habeas petition is that his trial counsel was ineffective because he failed to adequately consult with Cammer and seek his opinion regarding the State's plea agreement offer. Specifically, Cammer argues that his trial counsel performed deficiently in failing to consult with him alone and to adequately advise him, either alone or in his father's presence, regarding the consequences of going to trial.

In order to prevail on a claim of ineffective assistance of trial

counsel, a habeas petitioner must carry the burden under *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), of demonstrating that trial counsel's performance was professionally deficient and that there is a reasonable probability that, but for such deficiency, the result of the proceeding would have been different. *Hambrick v. Brannen,* 289 Ga. 682, 683 (715 SE2d 89) (2011). To satisfy the *Strickland* test, the petitioner must overcome the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct. Id. On appeal, we accept the habeas court's factual findings and credibility determinations unless clearly erroneous but independently apply the legal principles to the facts. *Wright v. Hall,* 281 Ga. 318 (2) (638 SE2d 270) (2006). Because Cammer failed to satisfy his burden of proving that his trial counsel's performance was professionally deficient, we affirm the trial court's order denying Cammer's petition. See *Evans v. State,* 288 Ga. 571 (7) (707 SE2d 353) (2011) (if an appellant fails to satisfy either prong of the *Strickland* test, the reviewing court need not examine the other prong).

1. In evaluating trial counsel's performance, American Bar Association ("ABA") standards constitute "guides to determining what is reasonable." (Citation and punctuation omitted.) *Wiggins v. Smith,* 539 U. S. 510, 524 (II) (B) (1) (123 SC 2527, 156 LE2d 471) (2003). Accord *Lloyd v. State,* 258 Ga. 645 (2) (a) (373 SE2d 1) (1988). As this Court has recognized, ABA standards provide that the decision whether or not to plead guilty belongs to the accused, not his or her attorney. *Johnson v. State,* 276 Ga. 57 (4) (a) (573 SE2d 362) (2002); *Chapman v. State,* 273 Ga. 348 (2) (541 SE2d 634) (2001); *Lloyd,* supra, 258 Ga. at 647 (2) (a); ABA Standards for Criminal Justice, Prosecution Function and Defense Function, 3d ed., Standard 4-5.2 (a), Standard 4-6.2 cmt. (1993). ABA standards relating to guilty pleas further provide that "[d]efense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant." ABA Standards for Criminal Justice, Pleas of Guilty, 3d ed., Standard 14-3.2 (c) (1999).

Contrary to Cammer's contentions, the record does not establish that trial counsel, by consulting jointly with Cammer and Cammer's father, failed to ensure that the decision to reject the State's plea agreement offer was Cammer's. The record supports the habeas court's factual findings that trial counsel believed that he was consulting with Cammer personally about the plea offer when he met with Cammer and Cammer's father and that trial counsel took Cammer's silence in the face of his father's insistence on Cammer going to trial to mean that Cammer did not want to accept the offer. Cammer admitted that he never told trial counsel that he wished to

plead guilty. Under the circumstances, we cannot conclude that trial counsel acted in an unreasonable or professionally deficient manner in concluding that Cammer had decided to let his father speak for him and wished to reject the State's offer.

That trial counsel now believes that he should have handled his consultation with Cammer differently and that Cammer did not make the decision to go to trial does not mean that his representation fell outside of the broad range of reasonable professional conduct. "[A] claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (Citation and punctuation omitted.) *Stokes v. State*, 281 Ga. 825, 835 (8) (642 SE2d 82) (2007). Viewed without the "distorting effects of hindsight," *Wallace v. State*, 272 Ga. 501, 504 (3) (b) (530 SE2d 721) (2000), trial counsel's conduct was reasonable in this case.

2. Although the decision whether to accept a proposed plea agreement must be made by the accused, "the accused should have the full and careful advice of counsel." ABA Standards for Criminal Justice Prosecution and Defense Function, Standard 4.52 cmt. See also *Lloyd*, supra, 258 Ga. at 647-648 (2) (a) (decision regarding plea offer "is one to be made by the defendant with the best advice of his counsel"). We have explained that "prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." (Citation and punctuation omitted.) *Johnson v. State*, 289 Ga. 532, 534 (712 SE2d 811) (2011). An attorney ordinarily may satisfy the duty to provide informed legal advice regarding a plea offer by discussing with the accused the risks of going to trial, the evidence against him or her, and differences in possible sentences that would be imposed following a guilty plea and following a conviction at trial. See *Johnson*, supra, 276 Ga. at 60 (4) (a) (trial counsel who counseled client on such issues not ineffective); *Lloyd*, supra, 258 Ga. at 648 (2) (a) (defendant "is entitled to be told that an offer to plead guilty has been made and to be advised of the consequences of the choices confronting him").[1]

Cammer contends that his trial counsel's advice was deficient

---

[1] Cammer attempts to cast trial counsel's duties more broadly, citing *Boria v. Keane*, 83 F3d 48 (2d Cir. 1996). In *Boria*, the United States Court of Appeals for the Second Circuit quoted Anthony Amsterdam's Trial Manual 5 for the Defense of Criminal Cases § 201, which states:

> [O]ften counsel can protect the client from disaster only by using a considerable amount of persuasion to convince the client that a plea which the client instinctively disfavors is, in fact, in his or her best interest. This persuasion is most often needed to convince the client that s/he should plead guilty in a case in which a not guilty plea would be destructive.

because he did not correct the misimpression that Cammer would receive a sentence of boot camp, rather than life in prison, if convicted at trial or explain that Cammer lacked valid defenses to the charges against him. Although trial counsel's testimony about his advice conflicted with the Cammers' testimony, the habeas court was entitled to believe trial counsel's testimony over that of Cammer and his father. See *McDaniel v. State*, 279 Ga. 801 (2) (a) (621 SE2d 424) (2005). Thus, the habeas court was entitled to credit trial counsel's testimony that he never discussed the possibility of boot camp with the Cammers. The record, moreover, does not establish that trial counsel's colleague advised the Cammers that Cammer might receive a sentence of boot camp or that, even if he did, trial counsel was aware of such advice when counseling the Cammers about the State's offer. The habeas court also reasonably found, based on trial counsel's testimony, that trial counsel discussed the weight of the evidence with the Cammers. Finally, the habeas court was authorized to conclude that trial counsel advised the Cammers of the possible sentences that could be imposed following a conviction at trial. Although he could not recall his specific advice on all of the charges, trial counsel testified that he was "sure" he advised the Cammers of the range of sentences he would face if he went to trial.[2]

Given the foregoing, trial counsel did not fail in his duty to offer Cammer his informed advice regarding the State's plea agreement offer.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2011 —
RECONSIDERATION DENIED DECEMBER 8, 2011.

*Linda S. Sheffield*, for appellant.

*Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.

---

(Emphasis omitted.) 83 F3d at 52-53. Cammer, however, fails to acknowledge that the Second Circuit subsequently issued a corrected version of its opinion in which it omitted the portion of the quotation from Amsterdam's trial manual set forth above. See *Boria v. Keane*, 99 F3d 492, 496-497 (2d Cir. 1996).

[2] We disagree with Cammer that this is a case "almost exactly like" *Boria*, supra, in which the Second Circuit held that trial counsel was ineffective. The testimony of trial counsel in *Boria* established that he "never gave his client any advice or suggestion as to how to deal with the People's offered plea bargain." 99 F3d at 497-498. By contrast, Cammer's trial counsel testified that he counseled the Cammers regarding the consequences of rejecting the State's plea offer.