## A11A1565. BABBITT v. THE STATE.

(723 SE2d 10)

ADAMS, Judge.

Ryan Babbitt appeals the denial of his motion to dismiss the State's indictment charging him with ten counts of violating OCGA § 16-9-58, which prohibits a person from acting with fraudulent intent to buy agricultural products and failing or refusing to pay for those products within a certain amount of time. We granted Babbitt's application for interlocutory review and now affirm.

Babbitt and the State agreed to the facts as stated in Babbitt's motion to dismiss, although the parties asserted that they might present additional facts at the hearing. As stated in Babbitt's motion, the facts show that in October 2007, Babbitt was living in Overbrook, Kansas and, in a telephone call with Dorris Barrett, owner of Barrett Livestock in Laurens County, Georgia, he arranged to purchase a large number of cattle. Between October 26, and December 1, 2007, Barrett Livestock made multiple shipments of hundreds of cattle to Babbitt in Kansas for a total cost of $365,350.99. The agreed facts also show that the parties did not reduce their agreement to writing; all communication between the parties was by telephone; Babbitt was never present in Georgia; Barrett Livestock did not specify a deadline for payment; and Babbitt never denied owing Barrett Livestock for the cattle. The parties agree, however, that payment was expected at some point in the future, relative to the order or delivery. On December 4 and 9, 2007, Babbitt wired Barrett Livestock payments of $77,000 and $28,000, respectively, leaving a balance of $260,350.99. But Babbitt failed to pay the balance, and in

116

November 2008, he was charged with ten counts of violating OCGA § 16-9-58, one for each shipment, nine of which were documented with bills of lading that provide that title of the cattle did not pass until the seller actually received funds in payment. Barrett acknowledged that he had no knowledge of Babbitt's intent regarding payment at the time of the sale.

Babbitt moved to dismiss the charges on the ground that venue does not lie in Laurens County. The trial court conducted a hearing and eventually ruled that venue was proper. At the hearing, Babbitt raised additional arguments, but the trial court held that they presented issues of fact for the jury.

1. Article VI, Section II, Paragraph VI of the 1983 Georgia Constitution requires that all criminal cases be tried in the county "where the crime was committed." See also OCGA § 17-2-2 (a). Because OCGA § 16-9-58 contains no specific statutory venue provision, we begin our review with the language used to define the crime in the statute. See *McKinney v. State*, 282 Ga. 230 (647 SE2d 44) (2007) (construing criminal statute to determine location of venue for crime). The statute provides as follows:

> *Any person*, either on his or her own account or for others, *who with fraudulent intent shall buy* cotton, corn, rice, crude turpentine, spirits of turpentine, rosin, pitch, tar, timber, pulpwood, Christmas trees, pine needles, horticultural crops, poultry and poultry products, cattle, hogs, sheep, goats, ratites, horses, mules, pecans, peaches, apples, watermelons, cantaloupes, or other products or chattels *and fail or refuse to pay therefor within* 20 days following receipt of such products or chattels or by such other payment due date explicitly stated in a written contract agreed to by the buyer and seller, whichever is later, shall be guilty of a misdemeanor; except that if the value of the products or chattels exceeded $500.00 such person shall be guilty of a felony and, upon conviction thereof, shall be imprisoned for not less than one year nor more than five years.

(Emphasis supplied.) OCGA § 16-9-58. Thus, the plain language of the statute criminalizes acting with fraudulent intent to buy the enumerated items and failing or refusing to pay for them within a certain time. "Studying 'the key verbs which define the criminal offense in the statute is helpful in determining venue in doubtful cases.' [Cit.]" *State v. Kell*, 276 Ga. 423, 425 (577 SE2d 551) (2003). The key verbs here are "buy" and "fail or refuse to pay," and the crime is not complete until the failure or refusal occurs. Babbitt was indicted with the same language.

Babbitt is alleged to have arranged to buy goods from Laurens County and to have failed or refused to pay the seller. The Uniform Commercial Code provides that "[u]nless otherwise agreed" payment is due at the "time and place at which the buyer is to receive the goods. . . ." OCGA § 11-2-310 (a). Here, the parties agreed that a payment has not been made until "remittance is received":

> Customer purchasing and paying for livestock by check or draft expressly agrees that title does not pass to said purchaser, but is retained by owner until funds are actually received on the check or draft. Such check or draft is accepted only to the rules and practices of any bank in which it may be deposited for collection, and does not constitute a payment for livestock until remittance is received thereon.

Thus, there is some evidence that the place of payment was at the seller's location, i.e., in Laurens County.

Here, assuming the State can prove fraudulent intent,[1] under OCGA § 16-9-58 there is some evidence that Babbitt wrongfully failed or refused to pay the seller in Laurens County for the cattle he purchased. In addition, Babbitt made telephone contact with the seller in Laurens County to effect the purchase, the cattle were shipped from there, and Babbitt sent two payments there. Cf. *Garmon v. State*, 219 Ga. 575, 579 (134 SE2d 796) (1964) (under earlier version of statute, venue was proper in Worth County, Georgia when Kentucky purchaser made telephone arrangements to buy from seller in Worth County and sent trucks there to pick up cattle and deliver checks, which proved to be not covered by sufficient funds).

And even if Babbitt's fraudulent intent arose in Kansas sometime after the cattle were shipped, the crime was not consummated until he failed or refused to pay. "If the commission of a crime under the laws of this state commenced outside the state is consummated within this state, the crime shall be considered as having been committed in the county where it is consummated." OCGA § 17-2-2 (d). Based on the plain reading of OCGA § 16-9-58, the wording of the bills of lading, and Georgia law regarding venue, we conclude that the trial court did not err by denying Babbitt's motion to dismiss.[2]

---

[1] The subjective intent of the accused relevant to a question of venue is a factual issue for the jury. *State v. Evans*, 212 Ga. App. 415, 416 (442 SE2d 287) (1994).

[2] We are not deciding whether venue could also be proper in Georgia counties other than where the seller is located, under other facts, where aspects of the crime occurred in a county other than where the seller was located. See generally *State v. Kell*, 276 Ga. 423, 425 (577 SE2d

118

In its order, the trial court noted that if Babbitt had been charged with theft, venue would be in Kansas; the State agrees, and Babbitt argues that it follows that venue is in Kansas for the alleged violation of OCGA § 16-9-58. But broadly speaking, theft criminalizes the act of taking. And Babbitt was not charged with theft but with violating a statute that criminalizes acting with fraudulent intent to buy certain items and then failing or refusing to pay for those items.

2. Babbitt also contends the trial court erred by denying his motion to dismiss on other grounds he raised at the hearing.[3] Babbitt argued in the alternative that under the stipulated facts, he could not have committed the crime. He reasoned that if title to the cattle never passed to him in Kansas under the terms of the bills of lading, then there can be no crime under OCGA § 16-9-58 because it only deals with cash sales, not promises of future payment or consignment sales. But the current statute does not specify that it pertains only to "cash sales," as the predecessor statute did, nor does it turn on when title passes to the buyer; the statute was specifically revised to extend its application to "all sales," and payment must now be made within 20 days following "receipt of such products or chattels or by such other payment due date explicitly stated in a written contract . . . , whichever is later."[4] OCGA § 16-9-58. Thus, Babbitt's citations to case law interpreting the earlier versions of the statute are inapposite regarding cash sales. And, given that the stipulated

_____

551) (2003) (an "ongoing crime" "occurs in any county in which an act in furtherance of the crime is committed.").

[3] The State apparently consented to this procedure. See *Ewell v. State*, 245 Ga. App. 610, 611 (1) (538 SE2d 523) (2000). See also *State v. Henderson*, 283 Ga. App. 111, 112 (640 SE2d 686) (2006) ("A criminal charge is generally dismissed only when there is a defect on the face of the indictment or accusation. [Cit.]").

[4] Prior to 1959, Ga. Code § 5-9914 applied only to "cash sale[s]." Ga. L. 1941, p. 337, § 1. In 1959, the law was amended, and the preamble to the legislation states that the Code section was being amended "so as to extend the provisions of said section to all sales of such products . . . unless credit shall be expressly extended therefore; to delete the cash sale provision therefrom; to repeal conflicting laws; and for other purposes." Ga. L. 1959, p. 143. The Code section, as amended, contained some of the relevant language that is in OCGA § 16-9-58 today, that is, it prohibits buying the enumerated agricultural products and failing or refusing to pay for them unless credit is expressly extended:

> Any person, either on his own account or for others, who shall buy [certain agricultural products], or other products or chattels, and shall fail or refuse to pay therefor or shall make way with or dispose of the same before he shall have paid therefor unless credit shall be expressly extended therefore, shall be guilty of a felony. . . .

Ga. L. 1959, p. 144, § 1. See also Ga. Code § 5-9914 (1975). In 1983, OCGA § 16-9-58 was enacted with identical language. See *State v. Fordham*, 172 Ga. App. 853 (324 SE2d 796) (1984). In 2003, the statute was amended to add the requirement of "fraudulent intent"; also, the provision regarding an extension of credit was deleted and replaced with a provision that simply requires payment within 20 days or by the time required in a written contract, whichever is later. Ga. L. 2003, p. 369, § 1.

facts do not include that the transaction at issue included an explicit due date under the terms of a written contract, Babbitt's argument that the indictment is insufficient must fail.

Babbitt also argues that since there is no evidence that he intended not to pay at the time of the sale, then no crime could have occurred during the Georgia telephone call. But again, the statute is not so limited. It simply requires fraudulent intent as a part of an act of buying and failing or refusing to pay. Moreover, whether and when he acted with such intent is a question of fact. We find no reversible error.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JANUARY 27, 2012 —
RECONSIDERATION DENIED FEBRUARY 15, 2012.

*Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito*, for appellant.

*Craig Fraser, District Attorney, Cheryl A. Banks, Assistant District Attorney*, for appellee.