**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 17, 2022**

# In the Court of Appeals of Georgia

A22A1449. THE STATE v. STUBBS.

BARNES, Presiding Judge.

The State filed an accusation in Newton County charging Terri Stubbs with three counts of terroristic threats based upon the allegation that, using Instagram, she threatened to kill her sister and two nieces. The trial court sustained Stubbs's plea in bar and granted her motion to dismiss the accusation for lack of venue. The State appeals, arguing that the trial court erred in considering the venue question in the context of a pretrial motion seeking dismissal of the accusation. The State further argues that the trial court erred in finding that the State could not establish venue in Newton County. For the reasons discussed below, we reverse.

The following facts are undisputed. In April 2021, sheriff's deputies responded to a home in Newton County based on a complaint of harassing calls. Upon arrival,

the deputies spoke with Stubbs's sister, who stated that Stubbs had threatened her and her two daughters and "was on her way to find them." Stubbs made the threats in voice messages that she sent through Instagram. In the voice messages, recordings of which are in the State's possession, Stubbs said that she was "going to war," that she "had bullets" for her sister and two nieces, and that they were "going to swallow these bullets." Stubbs did not live in Georgia, and the State conceded that it had no evidence that Stubbs was in Georgia when she recorded the voice messages and sent them through Instagram. The voice messages were received by Stubbs's sister and nieces in Newton County.

After she was charged by accusation with three counts of terroristic threats based on the Instagram voice messages, Stubbs filed a plea in bar seeking dismissal of the accusation for lack of venue on the ground that it was undisputed that the State could not prove that she was in Georgia when she sent the messages to her family members. The State responded that Stubbs's motion was procedurally defective because the question of venue should be left to the jury for resolution, but that if the trial court reached the issue, the court should find that venue was proper in Newton County because the Instagram voice messages were communicated to Stubbs's family members in that county.

2

The trial court agreed with Stubbs and granted her plea in bar for lack of venue. The trial court concluded that it had authority to rule on the venue question in the context of a pretrial plea in bar. The trial court further noted that OCGA § 17-2-2 (d) provides that if a crime is commenced outside of Georgia but consummated within Georgia, venue is proper in the county where the crime is consummated, and the court reasoned that the crime of terroristic threats is consummated where the threat is made rather than where the threat is received by the victim. Because the undisputed facts were that Stubbs lived in another state and that there was no evidence that Stubbs was in Georgia when she recorded and sent the Instagram voice messages, the trial court concluded that venue was not proper in Newton County and dismissed the accusation. This appeal followed.

1. As a threshold matter, the State contends that the trial court erred in considering the issue of venue in the context of a pretrial motion seeking dismissal of the accusation. We disagree.

"[V]enue is a jurisdictional fact the State must prove beyond a reasonable doubt in every criminal case." (Citation and punctuation omitted.) *Worthen v. State*, 304 Ga. 862, 865 (3) (a) (823 SE2d 291) (2019). In Georgia, a defendant may challenge venue through the filing of a pretrial motion seeking dismissal of the

3

indictment or accusation. See *McKinney v. State*, 282 Ga. 230, 232 (647 SE2d 44) (2007); *State v. Hasson*, 334 Ga. App. 1, 2-3 (1) (778 SE2d 15) (2015); *State v. Barber*, 193 Ga. App. 397, 398-399 (388 SE2d 350) (1989). In ruling on such a motion, the trial court cannot resolve disputed questions of fact pertaining to venue, which are reserved for the jury. Compare *State v. Al-Khayyal*, 322 Ga. App. 718, 725 (744 SE2d 885) (2013) (reversing the trial court's grant of a pretrial motion to dismiss the indictment for lack of venue because the record did not establish "that it would be impossible for the State to prove that [the defendant] committed the offenses in [the county] . . . alleged in the indictment"; explaining that there remained questions of fact regarding venue that "cannot be determined as a matter of law at this pretrial stage"), disapproved on other grounds by *Hill v. State*, 360 Ga. App. 143, 146, n. 4 (860 SE2d 893) (2021), and *State v. Evans*, 212 Ga. App. 415, 416 (442 SE2d 287) (1994) (concluding that the trial court "erred in making findings of facts on the venue issue" in ruling on the defendant's motion to dismiss the indictment because "[t]hese factual issues are for the jury"), with *Barber*, 193 Ga. App. at 397-399 (affirming the trial court's grant of the defendant's pretrial plea of improper venue, where the State could not prove venue in the county alleged in the indictment under "[t]he relevant facts, as stipulated to by the parties").

4

The State, however, relies on *State v. Hasson*, 334 Ga. App. 1 (778 SE2d 15) (2015), to argue that a trial court cannot address venue in the context of a pretrial motion to dismiss but instead must reserve the matter for the jury. The State's reliance on *Hasson* is misplaced. In *Hasson*, we reversed the trial court's pretrial ruling to transfer a criminal case from one county to another on the ground of improper venue. Id. at 2-4 (1). But we expressly noted that the defendant had filed a motion to transfer rather than a "pretrial motion seeking dismissal of the . . . indictment based on improper venue," id. at 2 (1), and we cited to Georgia cases indicating that a defendant can challenge venue through the latter type of motion. See id. at 2-3 (1). Thus, as we made clear in *Hasson*, that case is procedurally distinct from cases like the present one involving a pretrial motion seeking to dismiss the indictment or accusation for lack of venue. Moreover, in *Hasson*, we noted that the trial court improperly made a "per se" factual determination regarding where venue was appropriate and that such a determination was "reserved for the finder of fact at trial." See id. at 3 (1). In contrast, Stubbs's plea in bar did not seek to have the trial court resolve any disputed issues of fact pertaining to venue, and the trial court only

5

considered and relied upon facts agreed upon by the parties. Consequently, *Hasson* is distinguishable from the present case and provides no basis for reversal.

2. The State further argues that the trial court erred in concluding that venue could not be established in Newton County. According to the State, venue was proper in Newton County because Stubbs's threatening voice messages were communicated to and received by her sister and nieces in that county. We agree.

"Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed." (Citation and punctuation omitted.) *Bowen v. State*, 304 Ga. App. 819, 822-823 (1) (b) (697 SE2d 898) (2010). See Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. "OCGA § 17-2-2 (a) gives effect to this constitutional mandate by providing that 'criminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law.'" *State v. Kell*, 276 Ga. 423, 425 (577 SE2d 551) (2003). In evaluating a trial court's ruling on a pretrial motion seeking dismissal of the indictment or accusation for lack of venue, we apply a de novo standard of review. *Al-Khayyal*, 322 Ga. App. at 721.

Because the terroristic threats statute, OCGA § 16-11-37, does not contain a venue provision, "we begin our review with the language used to define the crime in the statute," *Babbitt v. State*, 314 Ga. App. 115, 116 (1) (723 SE2d 10) (2012), and

6

we focus on the key verbs defining the offense. See *Kell*, 276 Ga. at 425. OCGA § 16-11-37 provides in relevant part that "[a] person commits the offense of a terroristic threat when he or she threatens to . . . [c]ommit any crime of violence . . . [w]ith the purpose of terrorizing another." OCGA § 16-11-37 (b) (1) (A), (2) (A). Under this statutory provision, "the State must establish two elements to sustain a conviction for making terroristic threats: (a) that the defendant threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the purpose of terrorizing the victim." *Clement v. State*, 309 Ga. App. 376, 379 (1) (710 SE2d 590) (2011). "With regard to the first element, the plain and ordinary meaning of the word 'threat' refers to a communication, declaration, or expression of an intention to inflict harm or damage." (Citation and punctuation omitted.) *Bryant v. State*, 306 Ga. 687, 690 (1) (a) (832 SE2d 826) (2019). Hence, a conviction for making terroristic threats contemplates proof that the defendant communicated a threat to the victim with the intent to terrorize. See *Bryant*, 306 Ga. at 690 (1) (a); *Carver v. State*, 258 Ga. 385, 386 (1) (369 SE2d 471) (1988). The threat can be communicated directly to the victim or "in such a way as to support the inference that the [defendant] intended or expected it to be conveyed to the victim." (Citation, punctuation, and emphasis omitted.) *Steplight v. State*, 301 Ga. 272, 275 (1) (800 SE2d 548) (2017).

7

While the General Assembly has not specifically identified where a communication occurs for purposes of the terroristic threats statute, "[i]n other contexts, we have held that venue in communication-based crimes is proper in either the county in which the communication was sent or the one in which it was received." *Garland v. State*, 361 Ga. App. 724, 728-729 (1) (a) (865 SE2d 533) (2021). See *Reeves v. State*, 346 Ga. App. 414, 417 (1) (a) (816 SE2d 401) (2018) (noting that with respect to telephone-based crimes, "venue can be either the location from which the call originated or the place at which the call is received"). See also *Adams v. State*, 312 Ga. App. 570, 579 (3) (b) (718 SE2d 899) (2011) (concluding that where alleged crime occurred over an online chat service, venue was proper in the county where either the defendant or the investigator posing as a child utilized the chat service). Discerning no reason to depart from that general rule, we conclude that venue for the crime of making terroristic threats can lie in the county where the threatening communication was sent or the one where it was received. Thus, venue in this case could lie in Newton County, where it is undisputed that the threatening Instagram voice messages were received by Stubbs's family members.

Furthermore, pertinent to the present matter, Georgia has a venue provision addressing the circumstance where the "[c]rime [was] commenced outside the state."

OCGA § 17-2-2 (d). That statutory provision reads: "If the commission of a crime under the laws of this state commenced outside the state is consummated within this state, the crime shall be considered as having been committed in the county where it is consummated." OCGA § 17-2-2 (d). "Consummate" means to finish or complete. See *Consummate*, Merriam-Webster's Online Dictionary (last visited Sept. 9, 2022), https://www.merriam-webster.com /dictionary/consummate. And "[t]he crime of terroristic threats is complete when the threat is communicated to the victim and is coupled with the intent to terrorize." *Carver*, 258 Ga. at 386 (1). See *Bryant*, 306 Ga. at 691 (1) (a) (noting that "[t]he crime of making a terroristic threat was completed, if at all, when the appellant communicated the threat to [the victim] with the intent to terrorize her"). Hence, the alleged crimes in this case were not completed, and thus were not consummated, until the threats were communicated to Stubbs's family members in Newton County, rendering venue in that county proper under OCGA § 17-2-2 (d).

In dismissing the accusation for lack of venue, the trial court determined that venue could not be predicated on the victims' receipt of the threatening voice messages because the terroristic threats statute focuses exclusively on the conduct of the defendant. It is true that the crime of making terroristic threats focuses on the

9

defendant's conduct and intent rather than on the victim's state of mind or full comprehension of the threat. See *Edwards v. State*, 330 Ga. App. 732, 736 (2) (A) (769 SE2d 150) (2015) (upholding conviction for making terroristic threats to a detective even though the defendant was in custody when he made the threats, no immediate action was taken by the detective in response to the threats, and the detective laughed during the exchange with the defendant, because "[t]he crime of making terroristic threats focuses solely on the conduct of the accused" rather than on whether there was evidence that the victim was "terrorized by the threats") (citation and punctuation omitted); *Armour v. State*, 265 Ga.App. 569, 571-572 (1) (594 SE2d 765) (2004) (sustaining terroristic threats conviction where defendant yelled the threat while standing outside the door of the victim's house, even if the victim inside the house "did not hear precisely what he was yelling"); *Boone v. State*, 155 Ga.App. 937, 939 (2) (274 SE2d 49) (1980) (explaining that the crime of terroristic threats focuses on the conduct of the accused rather than on "the degree of fear into which the victims were placed" by the threats). And the threat does not have to be directly communicated to the victim. See *Steplight*, 301 Ga. at 275 (1). See also *Brown v. State*, 298 Ga.App. 545, 548-549 (680 SE2d 579) (2009) (sustaining terroristic threats conviction where the defendant's threats against his wife and

10

mother-in-law were communicated to his lawyer with the intent and expectation that the lawyer would communicate the threats to the victims). But even so, the threat cannot simply exist in the defendant's mind; there must be some conveyance or transmission of the threat. See *Bryant*, 306 Ga. at 691 (1) (a) (explaining that the terroristic threat was completed once communicated to the victim with the requisite intent); *Jackson v. State*, 270 Ga. 494, 496 (1) (512 SE2d 241) (1999) (noting that there must be proof that the defendant caused the threat to be conveyed). Consequently, we are unpersuaded that venue for the crime of making terroristic threats should deviate from the general rule that venue for communication-based crimes can lie in the place where the communication was received. See *Garland*, 361 Ga. App. at 728-729 (1) (a); *Reeves*, 346 Ga. App. at 417 (1) (a).

For the foregoing reasons, the State could prove that venue was proper in Newton County for Stubbs's alleged crimes of making terroristic threats based on the undisputed facts. Because the trial court erred in granting Stubbs's plea in bar and dismissing the accusation for lack of venue, we reverse the judgment.

*Judgment reversed. Brown and Hodges, JJ., concur*.