A96A2311. SPRAY v. THE STATE.
(476 SE2d 878)

ELDRIDGE, Judge.

Charlie Spray was convicted by a Lowndes County jury of ten counts of theft by taking and one count of making a false statement. He appeals the trial court's denial of his motion for directed verdict and subsequent motion for judgment of acquittal, contending that the evidence was insufficient to support his convictions for theft by taking because the allegations contained in the indictment and the proof adduced at trial were at variance. With regard to his conviction for making a false statement, appellant contends that the State failed to prove venue. Finding no merit to either of these contentions, we affirm.

Appellant was the Chief of Police in Valdosta, Lowndes County. Pursuant to his position, appellant applied to the Georgia Emergency Management Agency (GEMA) on behalf of the Valdosta Police Department to obtain surplus law enforcement items for drug interdiction purposes. The GEMA program obtained excess items of defense from the federal government and redistributed them to state law enforcement agencies specifically to aid the agencies in combating drug crimes.

Appellant's application was approved by the GEMA program in November 1991. Thereafter, between March 1993 and September 1994, appellant made numerous trips to the GEMA warehouse in Atlanta where he obtained goods ranging from clothing and sleeping bags to generators and trucks. Only once did appellant follow proper procedure: he informed the Valdosta city manager of an ambulance and a Dodge "K" car that he had acquired from GEMA. These items were properly impounded in the city lot and were given city identification numbers. However, the vast majority of the approximately 119 items that the appellant acquired from the GEMA program for the Valdosta Police Department never found their way into city property at all; appellant's trips to Atlanta and back culminated at his home where the GEMA items were left for the use of appellant, his relatives, and his friends. The city manager was unaware of the items obtained from GEMA by appellant, as was the Valdosta Police Department captain in charge of the local drug task force, for which purpose the items were ostensibly acquired.

Further, as an accounting measure in January 1995, GEMA sent a memorandum to all agencies that had received property under the

program. The memorandum requested "Validation of Compliance and Utilization" as to the use being made of the approximately 119 items allegedly received by the Valdosta Police Department; appellant signed the GEMA verification form asserting that: "All property obtained is being used ONLY by this agency and ONLY for drug or counterdrug operations."

1. In each of the theft by taking counts, appellant was charged with "unlawfully, knowingly and willfully tak[ing] the property of the State of Georgia." However, appellant contends that his taking of the property was *lawful* since GEMA willingly turned the property over to appellant in his capacity as Chief of Valdosta Police. Relying on this Court's decision in *Walker v. State*, 146 Ga. App. 237 (246 SE2d 206) (1978), appellant argues that while the evidence may have authorized a conviction for an "unlawful appropriation" after a lawful taking, the evidence does not support appellant's conviction for an "unlawful taking" as charged in the indictment. We disagree.

Our theft by taking statute, OCGA § 16-8-2, states that "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." Under the statute, the phrase "regardless of the manner in which the property is taken or appropriated" is a catch-all phrase rendering our theft by taking statute broad enough to encompass theft by conversion, theft by deception or any other of the "myriad .and even yet-to-be-concocted schemes for depriving people of their property." *Gordon v. State*, 181 Ga. App. 391, 392 (352 SE2d 582) (1986), rev'd on other grounds in *Gordon v. State*, 257 Ga. 335 (359 SE2d 634) (1987) (evidence showing an "outrageous markup" for services rendered not sufficient to support conviction for theft); see also *Lundy v. State*, 195 Ga. App. 682, 684 (394 SE2d 559) (1990); *Ray v. State*, 165 Ga. App. 89, 90 (299 SE2d 584) (1983). Although the statute defines two types of theft, i.e., an unlawful taking and an unlawful appropriation, the issue is not necessarily *how* the offense was perpetrated, but *when* the subjective intent to deprive the owner of the property arose: at the time of the taking, or thereafter while being in lawful possession. *Stull v. State*, 230 Ga. 99, 103 (196 SE2d 7) (1973); *Mason v. State*, 180 Ga. App. 235, 237 (348 SE2d 754) (1986). Thus, under the broad language of our theft by taking statute, the importance of the manner in which the theft is perpetrated is diminished by the determinant issues: the existence of the requisite intent to steal and when it began. *Stull*, supra at 103.

In terms of practical application, a grand jury will often return an indictment mirroring the exact language of the statute which gives rise to a cause of action on both forms of the offense and per-

mits a jury charge thereon. See *Dukes v. State*, 265 Ga. 422, 424 (457 SE2d 556) (1995). However, if a criminal defendant is charged solely under the "unlawful appropriation" language of OCGA § 16-8-2, the evidence must show that the defendant, being in lawful possession of the property, thereafter appropriated it to his own use with the requisite intent to deprive the owner thereof, and the trial court must so charge the jury. *Dukes*, supra at 423; *Walker*, supra. On the other hand, if the indictment charges the defendant, as in the case sub judice, solely under the "unlawful taking" language of the statute, then the evidence must show that the requisite intent to deprive the owner of the property was present at the time of the taking, and the trial court must so charge the jury. *Bell v. State*, 220 Ga. App. 293 (469 SE2d 714) (1996); *Robinson v. State*, 152 Ga. App. 296 (262 SE2d 577) (1979).

In the case sub judice, simply because appellant went through appropriate channels and obtained the GEMA property under color of his position as Valdosta Chief of Police, does not mean that appellant cannot be indicted for and found guilty of an unlawful taking under the statute. Again, the manner in which the theft occurred is not necessarily determinative. Instead, the question is whether the appellant had the requisite intent to deprive the State of Georgia of the goods at the time appellant received the property from GEMA. "It is plain that it was the intent of [the owner] to extend [the property], not to the accused, but to the [city] which they thought the accused represented. . . . They delivered possession to the accused, not for himself, but as they supposed, as agent. . . . It is clear that the accused intended to appropriate the proceeds of the property, the possession of which he thus acquired, to his own use. Under these circumstances, . . . it clearly made out a case within the purview of § 26-1802 [OCGA § 16-8-2]." *Stull*, supra at 102-103.

In this regard, the trial court in the case sub judice properly instructed the jury that in order to find the appellant guilty of the offense of theft by taking as charged in the indictment, "the state must prove beyond a reasonable doubt that the defendant at the time he received the property alleged in a particular count intended to take that property and convert it to his own use." Compare *Dukes*, supra at 423-424. The jury found the appellant guilty as charged, and this Court, in reviewing the evidence in a light most favorable to the verdict, finds that the evidence was sufficient for a reasonable trier of fact to have determined that appellant intended to deprive the State of Georgia of the GEMA property at the time of his receipt of the items and was, thus, guilty of theft by taking as alleged in the indictment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Our opinion in *Walker*, supra, does not demand a different

result. In *Walker*, the defendant, like the appellant in the case sub judice, had been indicted solely for an unlawful taking, but there ends the similarity. The *Walker* trial court directed a verdict on the issue of lawful possession, specifically finding that Walker was in lawful possession of the goods for which he had been indicted. However, the trial court acquiesced in the State's request to charge the jury on the "unlawful appropriation" language of the statute, contrary to the offense as alleged in the indictment. In the case sub judice, the issue as to the lawfulness of appellant's receipt of the goods from GEMA was left to the jury, and the trial court correctly instructed the jury regarding the elements of the crime as charged in the instant indictment. Thus, our opinion in *Walker*, supra, aids appellant not at all.

2. Appellant contends that venue for the crime of making a false statement under OCGA § 16-10-20 should have been in Fulton County where the form was sent after appellant had signed it. We do not agree.

In OCGA § 17-2-2, the general criminal venue statute, subsection (a) provides that actions shall be tried "where the crime was committed, except as otherwise provided by law." As OCGA § 16-10-20 provides for no specific statutory venue, our determination as to the venue for the crime will necessarily hinge on a resolution of the inquiry, "Where was the crime committed?" In making this determination, our opinion in *State v. Barber*, 193 Ga. App. 397, 398 (388 SE2d 350) (1989), holds sway. Although *Barber* dealt with a different section of our Code, OCGA § 49-4-146.1, this Court analyzed when an act of "falsifying" occurs: at the time a false statement is made, or at the time it is sent. We now find that the resulting conclusion in *Barber* applies herein: "Our review of both the statute and the indictment persuade[s] us that the crime, in this case, consisted of the act of 'falsifying,' rather than the act of 'submitting' or 'sending,' and thus we conclude that the crime was committed in [Lowndes] County and venue is proper there." Id. at 398. Common sense, too, aids us in this determination. OCGA § 16-10-20 makes it a crime for a person to knowingly *make* "any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement" regarding any matter "within the jurisdiction of any department or agency of state government." Thus, appellant made the false statement for which he was indicted when he signed the "Validation of Compliance and Utilization" form and thereby falsely attested to the use being made of GEMA property. Sending the form to GEMA in Fulton County did not make appellant's false attestations any *more* false or add in any way to the offense as described in the statute. Therefore, although sending the form to Atlanta may have aggravated the offense, as well as aided in the detection and prosecution of the

appellant for the crime, if appellant had signed the form and put it in a filing cabinet, the statement would be no less false under the facts of this case, and no less actionable under OCGA § 16-10-20.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED OCTOBER 10, 1996 — 

*J. Converse Bright*, for appellant.

*Michael J. Bowers, Attorney General, Terry L. Lloyd, Assistant Attorney General*, for appellee.