**FOURTH DIVISION
DILLARD, C. J.,
DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 20, 2018**

# In the Court of Appeals of Georgia

A18A0175. REEVES v. THE STATE.                                    DO-007 C

DOYLE, Presiding Judge.

Drusilla Reeves was convicted of making false statements[1] and misdemeanor obstruction of officers.[2] The trial court denied her amended motion for new trial, and Reeves appeals, arguing that (1) the evidence was insufficient; (2) the sentences should have been merged; and (3) trial counsel was ineffective. For the reasons that follow, we affirm.

---

[1] OCGA § 16-10-20.

[2] OCGA § 16-10-24 (a).

"On appeal, a conviction will be affirmed if [the appellate c]ourt determines that, under the evidence, any rational trier of fact could have found proof of guilt beyond a reasonable doubt."[3]

Viewed in this light, the evidence showed that Floyd County Sheriff's Department Deputies Marty Watkins and Robbie Whitfield had arrest warrants for Aaron Reeves, and on February 17, 2016, Lisa Langston called the Floyd County jail and spoke with Watkins regarding Aaron's arrest. Watkins confirmed that there were warrants out for Aaron's arrest, and Langston asked the officer if deputies would "hold off" attempting to arrest Aaron because his father had passed away; Langston indicated she would bring Aaron into the Department to surrender the next morning. Watkins testified that he checked with a number of funeral homes, but found no record of the supposedly deceased individual, and the following day, Langston failed to produce Aaron at the designated time, and Langston stopped returning Watkins's phone calls. Watkins testified that he received the call from Langston when he was in Floyd County.

---

[3] *Smith v. State*, 277 Ga. 213, 214 (1) (586 SE2d 639) (2003), citing *Jackson v. Virginia*, 443 U. S. 307, 313-314 (III) (A) (99 SCt 2781, 61 LE2d 560) (1979).

Anna Banks, who also worked at the Department, told Watkins that a person called the Department purporting to be Aaron's mother, Drusilla Reeves, and she asked to have "a special visit" with her other two sons, who were incarcerated at the jail. On cross-examination, Watkins admitted that the only person he spoke with identified herself as Lisa Langston, and he did not speak to Drusilla Reeves or anyone purporting to be Reeves, nor did Deputy Whitfield. Watkins testified that he arrested Langston and Reeves at Reeves's residence in Floyd County, where Langston admitted to and apologized for lying to Watkins, but she told Watkins that Aaron was in a different town; the deputies left the residence but doubled back, at which point they found Aaron coming out of the woods and arrested him. Deputy Whitfield testified that during this arrest, Reeves's voice had a distinctive deeper, raspier tone, but Langston's voice was not distinctive.

Langston, who was charged as a co-defendant with Reeves, pleaded guilty and testified at Reeves's trial; Langston testified that she initially called the warrant division and told them that Aaron's father had died, and later, she called the warrant division again, identifying herself as Reeves and asking them not to arrest Aaron. Langston stated that she called the Department from a different county when she identified herself as Reeves, and she did not recall giving officers her name when she

3

called them. Langston testified that Reeves had brought Aaron to stay with her in a different county leading up to these events, and then Langston brought him back to Reeves's home in Floyd County prior to their arrests.

Banks testified that she worked in the offender processing unit, which was separate from the warrants division, and she received a call from someone purporting to be the mother of Jason Reeves and Christian Nelson, who were in the jail at that time, and she needed to speak with them because their father had passed away. Banks testified that she explained to the caller the protocol for telling an inmate that a family member had passed away, and the information would have to be verified with the funeral home by an investigator, and then the investigator would tell the inmates. Banks testified that the caller became quite belligerent and demanded to speak to the inmates herself, either in person or on the phone, and she was "cagey" when giving information about the funeral home. Banks testified that she had heard Langston's voice, and it did not match the voice of the caller with whom she spoke because the caller had a raspy, deeper voice.

Reeves testified in her own defense, and she denied ever making a call to the Department or telling anyone there that her husband was dead; she did explain that

Aaron was staying with Langston before the day they were all arrested. After the evidence was presented, the jury found Reeves guilty of the two charges.

1. Reeves first enumerates several challenges to the sufficiency of the evidence, including that the evidence as a whole was insufficient and failed to exclude every other reasonable hypothesis of innocence, specifically, that Langston, rather than she, committed the crimes. Although there was testimony that could have supported a finding that Langston concocted the plan to lie to the Department and that she could have carried it out without Reeves's involvement, there was also evidence that Reeves was involved with the plan and assisted Langston in the ruse by making a separate phone call. "It is the province of the jury to resolve any conflicts in the evidence and to determine the credibility of witnesses. . . ."[4] And here, if the conflicts of evidence are resolved in favor of the verdict, the other reasonable hypotheses are excluded.

(a) *Venue*. Reeves contends that the State failed to present sufficient evidence to show that the crimes occurred in Floyd County. Reeves maintains that the only

---

[4] (Punctuation omitted.) *Marlow v. State*, 339 Ga. App. 790, 793 (1) (792 SE2d 712) (2016), quoting *Banta v. State*, 282 Ga. 392, 395-396 (1) (651 SE2d 21) (2007).

evidence of venue was that Langston spoke to Watkins when she was in Bartow County, not Floyd County where the case was prosecuted.

> Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed. Venue is a jurisdictional fact . . . and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt. Proof of venue is a part of the State's case, and the State's failure to prove venue beyond a reasonable doubt renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal.[5]

Relying on *Spray v. State*,[6] Reeves contends that proper venue in this case was the county from which the calls originated. *Spray* determined that because a defendant was charged with making false statements by falsifying a document, the crime occurred in the county in which the defendant completed the document and not

---

[5] (Footnote and punctuation omitted.) *Moody v. State*, 279 Ga. App. 457 (631 SE2d 473) (2006), quoting *Jones v. State*, 272 Ga. 900, 901-902 (2) (537 SE2d 80) (2000).

[6] 223 Ga. App. 154, 157-158 (2) (476 SE2d 878) (1996) (holding that making a false writing is chargeable in the county in which the defendant falsified the document and not the location of the government subdivision to which the document was submitted).

in the county where the government subdivision receiving the document was located.[7]

In this case, however, the false statements made were made over a telephone call, and therefore, the mechanism by which the crime was committed is different than that in *Spray*. Research reveals no case in this State in which either of these crimes have been assessed for proper venue when committed over the telephone.

OCGA § 17-2-2 (a), the general venue statute of Georgia states that "[c]riminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law."[8] Nevertheless, it goes on to state that "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed."[9] With regard to other telephone based crimes, this Court has generally relied on this provision of the venue statute to hold that venue can be either the location from which the call originated or the place

---

[7] See id. Compare with *State v. Johnson*, 269 Ga. 370, 372 (2) (499 SE2d 56) (1998) (holding that "venue for the prosecution of OCGA § 16-10-20 for the *use* of a false document is proper in the county in which the document was submitted for use, even if the person charged with using the false document made the document in another county") (emphasis supplied).

[8] OCGA § 17-2-2 (a).

[9] OCGA § 17-2-2 (h).

at which the call is received.[10] Accordingly, we hold that the evidence supports a finding that the crimes occurred in Floyd County where the Department employees heard Reeves's and Langston's false statements to them about the purported death.[11]

(b) *Willfulness*. Reeves also contends that the State failed to prove willfulness with regard to making a false statement under OCGA § 16-10-20. Based on the evidence, the jury was authorized to find that Reeves intended for Langston to make the false statement heard by Watkins and that Reeves later made another false statement to Banks. Accordingly, these arguments are without merit.

---

[10] See *Mize v. State*, 187 Ga. App. 418, 419-420 (2) (370 SE2d 525) (1988) (holding that under OCGA § 17-2-2 (h), a threat communicated from an unknown county to a recipient in DeKalb County could not be prosecuted in Rockdale County because no evidence showed the call originated from Rockdale County). *Overcash v. State*, 111 Ga. App. 549, 550-551 (2) (142 SE2d 306) (1965) (holding that venue for the crime of using vulgar words in a telephone conversation with a female is the county where the female received the call). See also *Rogers v. State*, 298 Ga. App. 895, 898 (3) (c) (681 SE2d 693) (2009) (explaining that venue for the purposes of OCGA § 16-13-32.3, using a telephone to facilitate the commission of a felony, is located in the county in which the call originated or the county to which the call was made based on federal case law related to the similar federal statute upon which the state statute is based); *Maldonado v. State*, 284 Ga. App. 26, 27-28 (1) (643 SE2d 316) (2007) (same); OCGA § 16-11-39.1 (c) (specifying that the crime of harassing communication occurs either in the county from which the call originated or in the county where the call was received).

[11] See *Mize*, 187 Ga. App. at 419-420 (2); *Overcash*, 111 Ga. App. at 551 (2). Compare with *Spray*, 223 Ga. App. at 157 (2).

8

2. Reeves challenges the trial court's separate sentences of 3 years' probation as to the false statements charge and 12 months' probation as to the obstruction of an officer charge.

(a) *Lenity*. Reeves contends that the rule of lenity applies in this case because the State used the same facts to support both charges. We disagree. This case falls squarely under the Georgia Supreme Court's decision of *Banta v. State*,[12] in which that Court explained that the rule of lenity does not apply to OCGA § 16-10-24 (a) and OCGA § 16-10-20 because "the two defined crimes do not address the same criminal conduct, [so] there is no ambiguity created by different punishments being set forth for the same crime. . . . Further, that a single act may, as a factual matter, violate more than one penal statute does not implicate the rule of lenity."[13]

(b) *Merger*. Reeves argues that the charges should have factually merged at sentencing. We disagree. Reeves was charged and convicted for two separate phone calls. The State charged Langston and Reeves with (1) knowingly and willfully making a false representation by providing false information to Whitfield and Banks that the father of Aaron had died in order to prevent Aaron's arrest and to get

---

[12] 281 Ga. 615, 617-618 (2) (642 SE2d 51) (2007).

[13] Id. at 618 (2).

9

visitation with Jason and Christian; and (2) obstruction of an officer for knowingly and willfully obstructing, resisting, and opposing Whitfield and Watkins in the lawful discharge of their duties. The evidence shows that additional, separate conduct was necessary to support the conviction for making a false statement as compared to obstruction of an officer.[14] Accordingly, the trial court correctly sentenced Reeves separately for the charges.

3. Finally, Reeves contends that she received ineffective assistance of trial counsel, including that trial counsel failed to prepare for trial by producing evidence that Reeves regularly visited Jason and Christian at the jail and that trial counsel failed to object to Banks's testimony that she heard Reeves's voice when she was booked on these charges.

> To prevail on these claims, [Reeves] must show both that h[er] counsel's performance was deficient and that the deficient performance so prejudiced h[er] that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different. The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. Failure to make

---

[14] See, e.g., *McKenzie v. State*, 302 Ga. App. 538, 539 (1) (a) (691 SE2d 352) (2010) explaining that "convictions on these two independent crimes were based upon separate and distinct conduct, [therefore,] they did not merge for sentencing purposes").

the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. [Reeves] has failed to make the required showings.[15]

It is clear from the transcript that trial counsel attempted to draw out all the weaknesses in the State's case, such as highlighting Langston's contention that she committed the crimes herself and that she claimed to be Reeves when she called, and through Reeves's own testimony, she was able to present her defense that she was not involved in the calls. Based on the evidence as shown above, Reeves has not demonstrated that objecting to Banks's testimony or providing documentation of prior visits by Reeves to the jail or prior calls to 911 about Aaron would have affected the outcome of the case.[16] Accordingly, this enumeration is without merit.

*Judgment affirmed. Dillard, C. J., and Mercier, J., concur.*

---

[15] (Citations and punctuation omitted.) *Briscoe v. State*, 344 Ga. App. 610, 614 (3) (__ SE2d __) (2018).

[16] See, e.g., id. at 614-615 (3).