**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 11, 2022**

# In the Court of Appeals of Georgia

A21A1807. FINCHER v. STATE.

HODGES, Judge.

A jury convicted Teddy Lee Fincher of three counts of aggravated assault, two counts each of aggravated stalking and false imprisonment, and one count each of burglary, cruelty to children in the third degree, criminal trespass, influencing a witness, and battery. The trial court denied Fincher's motion for new trial, and he now appeals, contending that he was excluded from a critical portion of the proceedings against him, that several pieces of evidence were improperly admitted, that the trial court erred in denying his motion for directed verdict as to one of his aggravated stalking charges, that evidence of venue concerning one of the counts of aggravated stalking was insufficient, that the judge made an improper commentary on the evidence during the jury charge, and that he received ineffective assistance of trial

counsel. We agree with Fincher and the State that one of Fincher's aggravated stalking convictions should be vacated, and thus we reverse the denial of his motion for new trial as to that conviction and remand this case with direction. As to the remainder of the trial court's order on the motion for new trial, we find no error and we affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation and punctuation omitted.) *Poteet v. State*, 358 Ga. App. 82 (853 SE2d 671) (2021).

So viewed, the evidence showed that Fincher was a drug dealer and addict. He had relationships with several drug addicted young women for whom he would provide pills, including A. B. and L. A. He would provide drugs to the women, and then punish them by withholding the drugs from them until they got sick.

*A. B. and Family*

One night, A. B. retrieved several "Roxies"[1] which were intended for both her and Fincher. She was unable to bring them to Fincher's house that night, and he became enraged. Fincher then drove to A. B.'s home, which was a trailer located on

---

[1] "Roxies" is a slang term for Roxicodone, a prescription opioid.

2

property owned by her parents, and banged on the trailer. In response, A. B. locked the doors, so Fincher used a crowbar or similar tool to gain entry to the residence. Fincher threatened A. B. with the crowbar, cursed at her, and snorted one of the pills she obtained for him that night. A. B.'s mother, J. B., and her stepfather heard Fincher arrive on the property, and they went over to A. B.'s trailer. There they found the door to the trailer busted and Fincher threatening A. B. Fincher then lunged with the crowbar at J. B. until A. B. intervened between the two of them. As this was happening, J. B.'s minor child was awake in the bedroom of the trailer and could hear what was happening. J. B.'s stepfather arrived at the trailer with a shotgun and was eventually able to convince Fincher to leave.

As a result of this incident, Fincher was arrested and a condition of his bond was to have no contact with A. B., whose family sent her to rehab. When A. B. wanted to leave rehab early, her family refused to pick her up. A. B. called Fincher, who picked her up, gave her drugs, and brought A. B. back to his house. While she was at his house, Fincher locked A. B. in a bedroom and handcuffed her to the bed. Against her wishes, Fincher injected A. B. with drugs, which she believed to be Roxies. These injections made her sick.

Also while at his house, Fincher told A. B. to call the district attorney to have her charges against him dropped. He offered her pills in exchange for this call, and also threatened her. When Fincher handcuffed her to the bed, he told her that she was not going to take his freedom, or else he would take hers. He threatened her family as well. A. B. called the district attorney's office from Fincher's phone to state that she wanted to drop the charges.

Eventually, A. B. concocted a plot to leave by asking Fincher to take her to a girlfriend's house to get a laptop to use for online classes. In actuality, A. B. had Fincher bring her to a former boyfriend's house to ask for his help escaping her situation. Fincher called this man multiple times trying to get in touch with A. B. During these calls Fincher threatened the man and also told him to tell A. B. to stay out of Bowdon, Georgia or she would be killed. A. B. was aware of these calls and they scared her. After leaving Fincher's residence, A. B. followed through with her request that the charges be dropped by filling out paperwork because she was scared of Fincher.

*L. A.*

L. A. is a young woman who met Fincher because her ex-boyfriend was also a drug dealer. She and Fincher would use drugs together. At one point in their

relationship, Fincher bonded L. A. out of jail using his property as collateral, and in exchange had her sign the title of her car over to him. He never returned the title to her. Upon her release from jail, L. A. lived at Fincher's house and did not feel free to leave. Fincher injected her with drugs. One time, L. A. obtained pills and did not provide any for Fincher, which angered him. He pushed her down and kicked her in the chest. Sometimes Fincher would handcuff L. A. to the bed for hours, which could require her to urinate on herself. Eventually she called her mother to come pick her up because she was so scared of Fincher.

Fincher was convicted by a jury of the following charges: (1) burglary of A. B.'s home; (2) aggravated assault of A. B. for brandishing the crowbar at A. B.; (3) aggravated assault of J. B. for brandishing the crowbar at J. B.; (4) cruelty to children in the third degree for committing aggravated assault on J. B. knowing that A. B.'s minor son was present; (5) criminal trespass for damaging the trailer owned by A. B.'s stepfather; (6) aggravated stalking for violating a condition of his pretrial release by contacting A. B. "at or about [Fincher's] residence without the consent of [A. B.] for the purpose of harassing and intimidating [A. B.]"; (7) aggravated stalking for violating a condition of his pretrial release by contacting A. B. via telephone; (8) influencing a witness for deterring A. B. from testifying against him; (9) false

imprisonment of A. B.; (10) aggravated assault of A. B. for injecting A. B. with a controlled substance; (11) false imprisonment of L. A.; and (12) battery of L. A. for kicking her. The trial court denied his motion for new trial, and Fincher now appeals.

1. Fincher contends that his right to be present at all critical stages of the proceedings against him was violated when he was excluded from a bench conference concerning prospective jurors. We find that Fincher has demonstrated no error.

"[T]he Georgia Constitution guarantees [a] criminal defendant[] the right to be present, and see and hear, all the proceedings which are had against him on the trial before the Court." (Citation and punctuation omitted.) *Zamora v. State*, 291 Ga. 512, 517-518 (7) (b) (731 SE2d 658) (2012). Moreover, "proceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present." (Citation and punctuation omitted.) Id. at 518 (7) (b). A defendant "bears the burden of showing that he was denied the right to be present at bench conferences[.]" *Gillespie v. State*, 333 Ga. App. 565, 572 (2) (a) (774 SE2d 255) (2015). "[D]enial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal. Instead, a violation is presumed to be prejudicial." (Citations omitted.) *Smith v. State*, 284 Ga. 599, 609 (4) (669 SE2d 98) (2008).

Here, a bench conference was conducted during the voir dire process. At that bench conference the prosecutor stated to the trial court: "There were two others that we agreed on that were for cause to come off. Number four and number seven. She said that she couldn't be fair and impartial, and that is Ms. [R]." The trial court responded to this statement with "Okay," and then the bench conference ended. One more question was asked of the jury panel, and then the trial court stated "let the record reflect that the Defendant has been present for all of the voir dire process." No objection was made to this assertion.

The record does not reflect whether Fincher approached the bench with his counsel, but at the motion for new trial hearing, Fincher testified that he did not approach and that he did not tell his counsel that he did not want to be present for the bench conference.[2] It is undisputed that he was in the courtroom at the time of this bench conference. Notably, however, Fincher provided no testimony that he could not see and hear the substance of the bench conference from his place in the courtroom. For this reason, Fincher has failed to meet his burden, and this enumeration provides no basis for reversal. *Alvarado v. State*, 360 Ga. App. 113, 119 (2) (c) (860 SE2d 886)

---

[2] Fincher's trial counsel passed away prior to this hearing, so there is no testimony from him concerning what transpired with regard to this bench conference.

(2021) ("Because Alvarado has presented no evidence to meet his burden of showing that he was denied the right to be present in the sense that he could not see, hear, and participate, he has failed to meet his initial burden, and we will not reverse on this basis").

2. Fincher contends that the trial court erred in admitting other acts evidence to show motive and intent as to his three charges for aggravated assault and the battery charge. We find no reversible error.

Pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)")

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. For other acts evidence to be admissible, a three-part test must be satisfied. The trial court must find that: (1) the other acts evidence is relevant to an issue other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ("Rule 403"), and (3) there is sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed the acts. We review a trial court's decision regarding Rule 404 (b) evidence for an abuse of discretion.

(Citations and punctuation omitted.) *State v. Atkins*, 304 Ga. 413, 416-417 (2) (819 SE2d 28) (2018).

Here, the State introduced several pieces of other acts evidence for the purposes of establishing motive and intent for the aggravated assault charges concerning A. B. and J. B. as well as the battery charge concerning L. A. Specifically, following the State's notice of intent to introduce this evidence as other acts, the foregoing evidence was presented, subject to a limiting instruction:

- Fincher's friend Keith Toby Keyer testified that on one occasion, he took Fincher to A. B.'s house late at night. Fincher beat on her door, and A.B. opened the door and let Fincher inside. Keyer also testified that he saw Fincher burn a young female, L. H., with a cigarette when she was high on drugs.

- L. H. also testified that Fincher burned her with lit cigarettes and she showed her scars from this to the jury. She also testified that Fincher got mad at her for doing cocaine, so he slammed her head into a toilet.

- K. C. testified that once when Fincher was high he mistook her for his girlfriend and threw a bottle at her, which resulted in her finger being broken. She also testified that on one occasion when Fincher thought

9

she was withholding pills from him, he threw pills at her and shoved her.

The first step of the analysis is to review the relevancy of the extrinsic act evidence.

> Motive is the reason that nudges the will and prods the mind to indulge the criminal intent. Overall similarity between the charged crime and the extrinsic offense is not required when the offense is introduced to show motive, but the extrinsic evidence must be logically relevant and necessary to prove something other than the accused's propensity to commit the crime charged. To rule otherwise would make all prior robberies admissible in any robbery case, all prior murders admissible in any murder case, and so on.

(Citations and punctuation omitted.) *Kirby v. State*, 304 Ga. 472, 486-487 (4) (b) (819 SE2d 468) (2018). Furthermore,

> [w]here the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

(Citation and footnote omitted). *Kirby*, 304 Ga. at 480 (4) (a).

10

If this Court determines the evidence was relevant, we must next engage in an analysis pursuant to Rule 403 to determine if the probative value of the evidence is substantially outweighed by any prejudice.

> Relevance is a binary concept – evidence is relevant or it is not – but probative value is relative. Evidence is relevant if it has "any tendency" to prove or disprove a fact, whereas the probative value of evidence derives in large part from the extent to which the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. Probative value also depends on the marginal worth of the evidence – how much it adds, in other words, to the other proof available to establish the fact for which it is offered. The stronger the other proof, the less the marginal value of the evidence in question. And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence.

(Citation, punctuation, and emphasis omitted.) *Olds v. State*, 299 Ga. 65, 75-76 (2) (786 SE2d 633) (2016). Lastly, we must determine if the evidence is sufficient such

11

that a jury could find by a preponderance of the evidence that the defendant committed the acts. Fincher, however, raises no error with this prong of the analysis.

Under this analysis, we conclude that some of the other acts evidence was properly admitted; however, other evidence should have been excluded.[3]

> Since the admission of [some of the other acts] evidence pursuant to OCGA § 24-4-404 (b) was erroneous, we must review the record de novo to determine whether the trial court's error was harmless. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In doing so, we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case.

---

[3] For instance, the State argues that evidence that L. H. was burnt with lit cigarettes while unconscious from drugs shows Fincher's motive and intent to use drugs and violence to manipulate, control, and detain women. Such an argument, however, is merely an impermissible one seeking to demonstrate that Fincher's bad character gave him the propensity to commit the crimes charged. See *Strong v. State*, 309 Ga. 295, 312 (2) (c) (4) (d) (2) (845 SE2d 653) (2020) ("The State has argued that the evidence of Appellant's other violent acts was relevant to show that his 'motive is to control other people' with violence – 'whenever a person doesn't submit to his control, he reacts with violence.' That is a classic improper propensity argument, focusing on Appellant's violent character and identifying his motive to act in far too generic a fashion. Accordingly, the trial court also abused its discretion by admitting the other-act evidence to show Appellant's motive.") (citation, punctuation, and footnote omitted).

(Citations and punctuation omitted.) *Brown v. State*, 303 Ga. 158, 164 (2) (810 SE2d 145) (2018).

Here, we find that the State introduced strong independent evidence of Fincher's guilt such that any error in admitting some of the other acts evidence was harmless. See *Lofton v. State*, 309 Ga. 349, 356-357 (3) (b) (846 SE2d 57) (2020). Multiple witnesses corroborated the account of what transpired at A. B.'s trailer and the physical evidence supported their account that Fincher forcibly entered and brandished a crowbar at A. B. and J. B. while a minor child was nearby. K. C. testified that Fincher admitted to her that he used a crowbar to enter A. B.'s trailer. Indeed, one of Fincher's friends, A. T., who he called as his witness, testified that Fincher admitted to breaking into A. B.'s home. This same friend testified that she saw Fincher lock the bedroom door while A. B. and L. A. were inside. K. C. also testified that she heard Fincher instruct A. B. to contact the district attorney to drop the charges and that he would give her pills in exchange. Moreover, the properly admitted evidence from victims A. B. and L. A. corroborated each other's accounts of the treatment they received from Fincher, including being subjected to multiple forms of physically abusive and threatening behavior, being restrained against their wills, and being injected by Fincher with intravenous drugs. Here, any improperly

13

admitted evidence was harmless in light of the strength of the undisputedly properly admitted evidence against Fincher as to all of the charges against him, except count 6 discussed in greater detail below in Division 5.[4]

3. Fincher contends that the trial court erred by admitting evidence of his bad character from victims A. B. and L. A. We find no reversible error.

As stated above, pursuant to Rule 404, evidence of a defendant's poor character cannot be admitted solely for the purpose of demonstrating conformity therewith. However,

> [t]he limitations and prohibition on "other acts" evidence set out in OCGA § 24-4-404 (b) do not apply to "intrinsic evidence." [The Supreme Court of Georgia] and the Eleventh Circuit have both set out factors defining this type of evidence: Evidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense. Intrinsic evidence must also satisfy Rule 403.

---

[4] We kindly caution prosecutors to resist the urge to introduce every piece of deplorable conduct a defendant has been involved in without a careful examination of its admissibility.

14

(Citations and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). More specifically,

> [i]n applying these factors, the [Supreme Court of Georgia] has noted that evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. The court went on to explain that evidence of other acts is "inextricably intertwined" with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted. And this sort of intrinsic evidence remains admissible even if it incidentally places the defendant's character at issue.

(Citations and punctuation omitted.) Id. at 485-486 (IV) (d).

Here, Fincher complains about the admission of evidence that he provided drugs to A. B. and L. A., that he was addicted to drugs, and that he forced L. A. to have sex with other men in exchange for drugs. He concedes that evidence that he provided drugs to A. B. was intrinsic evidence, but claims it was unduly prejudicial pursuant to Rule 403. This overlooks the fact that he himself testified that he provided A. B. with drugs. See *Adkins v. State*, 301 Ga. 153, 156 (2) (800 SE2d 341) (2017)

15

("A defendant generally cannot complain on appeal about the admission of evidence that he introduced himself, even when he does so after the trial court has overruled his objection to the admissibility of that evidence."). Moreover, even though Fincher did not admit he was *addicted* to drugs, he did admit to being a drug user. Specifically, Fincher admitted to using the pills he came to retrieve from A. B. on the night of his altercation with her family.

As to the evidence that Fincher provided L. A. with drugs, we find the evidence to be intrinsic because it was necessary to complete the story of the crime of her false imprisonment. L. A. did not contend that she was handcuffed to the bed for her entire tenure at Fincher's home. Accordingly, it was necessary to introduce his provision of drugs to her to explain why she would stay with a man who treated her this way. Thus the testimony was "an integral and natural part of [L. A.'s] accounts of the circumstances surrounding the offenses for which [Fincher] was indicted." (Citation and punctuation omitted.) *Williams*, 302 Ga. at 486 (IV) (d).

Pretermitting whether evidence that Fincher forced L. A. to have sex with other men for drugs was error,[5] or that any of the other evidence identified above should

---

[5] The evidence on this point does not directly state that Fincher forcibly required this of L. A., but the implication was raised by the questions posed to her and other witnesses, and the State argued that Fincher pimped L. A. in its closing.

16

have been excluded pursuant to Rule 403, we find any error harmless. As stated above, there was strong evidence, which Fincher does not dispute was properly admitted, to support the jury's convictions. Thus, we do not find it highly probable that any of the complained of evidence contributed to the verdict. See *Brown*, 303 Ga. at 164 (2).

4. Fincher contends the trial court erred by admitting additional other acts evidence that was not subject to its limiting instruction. We again find no reversible error.

Fincher contends that several additional pieces of other acts evidence were admitted for which the trial court provided no limiting instruction.[6] Specifically, Fincher claims error with the following:

- K. C.'s testimony that Fincher provided her with drugs and was an addict.

---

[6] The parties disagree as to the standard of review which governs our analysis of this enumeration. Fincher contends it is for an abuse of discretion, given a continuing objection he had to the admission of character evidence. The State contends that there was no objection to this evidence, and thus our review is for plain error. The exact nature of the continuing objection granted by the trial court, as cited by Fincher in his brief, is to "all of the similar transaction evidence," and it is unclear if this objection is only to the evidence specifically admitted pursuant to a limiting instruction, or as to all evidence of other acts of Fincher. We need not resolve this conflict, however, because this enumeration fails under either standard.

17

- Testimony from Fincher's friend, Keyer, that: Fincher threatened to kill him; that he witnessed drug use at Fincher's home, including Fincher injecting a woman with a blue substance; that he provided drugs to Fincher in exchange for sex with women; and that he transported women to other men with whom Fincher was forcing them to have sex.

This testimony was provided after the trial court had instructed the jury that the other acts evidence portion of K. C. and Keyer's testimony had concluded. The evidence introduced, however, does not precisely align with Fincher's characterization of it. Notably, Keyer did not clearly testify that Fincher threatened to kill him; instead his testimony was internally inconsistent. Keyer first denied that Fincher threatened to kill him, and when pressed about whether he ever told the prosecutor otherwise, he admitted that he did tell her he was threatened, but then stated that he did not know if he was actually threatened.

Additionally, Keyer did not testify that he exchanged sex for drugs. According to Keyer's testimony, he went over to Fincher's house because of the women there, but implied that they voluntarily had sex with him because they liked him.[7]

---

[7] Interestingly, Fincher's own witness, A. T., testified that Fincher forced her to "be intimate with" Keyer in exchange for pills, and Fincher raises no error with regard to this testimony.

18

Further, Keyer's testimony about the injection of drugs into another woman did not state or suggest that Fincher's actions were taken without that woman's consent. Indeed, he characterized Fincher's conduct as "helping them out or something."

As stated previously, any testimony by K. C. that Fincher sold her drugs or used drugs himself was cumulative of Fincher's own testimony that he sold and used drugs, and thus provides no basis for reversal. See *Adkins*, 301 Ga. at 156 (2). As to Keyer's testimony, for the reasons more specifically stated above in Division 2, any error in admitting this testimony due to the failure to perform a 404 or 403 analysis was harmless in light of the strength of the undisputedly admissible evidence against him.

5. Fincher contends that the trial court erred in denying his motion for directed verdict as to Count 6 of his indictment for aggravated stalking because the indictment was fatally defective due to it not alleging criminal conduct. The State concedes this, and we agree.

Count 6 of the indictment charged Fincher with aggravated stalking "in violation of a condition of pretrial release, . . . [by] unlawfully contact[ing A. B.] at or about [*Fincher's*] *residence*, without the consent of [A. B.], for the purpose of

19

harassing and intimidating [A. B.] . . ." (Emphasis supplied.) A person commits aggravated stalking when he "in violation of a . . . condition of pretrial release . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." OCGA § 16-5-91 (a). The term "place or places" is defined as "any public or private property occupied by the victim *other than the residence of the defendant*." (Emphasis supplied.) OCGA § 16-5-90 (a) (1); see also *Bruno v. Light*, 344 Ga. App. 799, 801 (1) (b) (811 SE2d 500) (2018) (the statute "excludes the defendant's residence from the definition of 'place or places' only when it is occupied by the victim.").

At the close of the State's case, Fincher moved for a directed verdict as to several charges, including Count 6, which was denied.[8]

> The standard of review for the denial of a motion for a directed verdict
> of acquittal is the same as for determining the sufficiency of the
> evidence to support a conviction: the evidence must be sufficient for a
> rational trier of fact to find beyond a reasonable doubt that the defendant

---

[8] Oddly, the trial court seemed to have some awareness of the problem with this charge, because over Fincher's objection, it charged the jury by removing reference to the legal requirement that the aggravated stalking must occur at a place other than the defendant's residence.

was guilty of the charged offense. The evidence must be viewed in the light most favorable to support the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.

(Citation omitted.) *Hughes v. State*, 297 Ga. App. 217 (676 SE2d 852) (2009). Here, even under this deferential standard, it is clear that Fincher should have been granted a directed verdict as to Count 6 given that the indictment as to that charge was void. *Cooks v. State*, 325 Ga. App. 426, 427 (1) (750 SE2d 765) (2013) ("If an accused individual can admit to all of the allegations in an indictment and still be not guilty of a crime, then the indictment generally is insufficient and must be declared void.") (citation omitted). The law excludes one's own residence from the places where aggravated stalking can occur when the victim is present at that residence. The conduct which forms the basis of Count 6 occurred while both Fincher and A. B. were at his residence, thus, it could not form the basis of an aggravated stalking charge. The trial court erred in failing to grant a directed verdict as to this count of the indictment and in failing to grant Fincher's motion for new trial as to this count.[9]

---

[9] It is worth noting that the State conceded that this conviction should be vacated at the motion for new trial, but the trial court denied the motion regardless without any analysis in a conclusory four-line order.

Accordingly, we reverse the denial of the motion for new trial as to this charge and remand this issue to the trial court to vacate that conviction and re-sentence Fincher.

6. Fincher contends the evidence was insufficient to establish venue as to his other charge for aggravated stalking in Count 7 of the indictment. We disagree.

Georgia law provides that,

[a]s with the other elements of a criminal offense, the state must prove the element of venue beyond a reasonable doubt. On appeal, we view the evidence of venue in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime [was] committed in the county where the defendant was indicted. Whether the state met its burden as to venue is a matter resting soundly within the purview of the jury, and ambiguities in the trial evidence must be resolved by the trial jury, not appellate courts.

(Citations and punctuation omitted.) *Boyd v. State*, 351 Ga. App. 469, 470-471 (2) (829 SE2d 163) (2019). "With regard to [ ] telephone based crimes, this Court generally has relied on this provision of the venue statute to hold that venue can be either the location from which the call originated or the place at which the call is received." (Footnote omitted.) *Reeves v. State*, 346 Ga. App. 414, 417 (1) (a) (816 SE2d 401) (2018).

22

Here, Count 7 of the indictment charged Fincher with

> the offense of **Aggravated Stalking (OCGA § 16-5-91)** in that [Fincher], in the State of Georgia and in the County of Heard . . . in violation of a condition of pretrial release, did there and then unlawfully contact [A. B.] at or about said [A. B.'s] telephone via telephone calls and texting, without the consent of [A. B.] for the purpose of harassing and intimidating [A. B.] . . . (Emphasis in original.)

The evidence supporting this charge was that A. B.'s ex-boyfriend, to whose house she escaped from Fincher, received multiple telephone calls threatening him and A. B. These calls scared A. B. The ex-boyfriend testified that he lived in Carrollton, Georgia. Although no testimony established what county Carrolton is located in, neither party contends it is located in Heard County where Fincher was indicted. Evidence was presented, however, that Fincher lived in Heard County.

Fincher is correct that no direct evidence established his location at the time he made the phone calls to the ex-boyfriend to reach A. B. However, "[l]ike any other fact, venue may be proved by circumstantial evidence, and it is enough if the fact of venue is properly inferable from all the evidence. The jury could properly infer from this evidence that [Fincher was located at his home in Heard County when he placed the phone calls]." (Citation and punctuation omitted.) *Boyd*, 351 Ga. App. at 472 (2)

23

(b); see also *Garza v. State*, 347 Ga. App. 335, 338 (1) (b) (819 SE2d 497) (2018) (finding that it is the role of the jury to interpret evidence of venue and we review that determination in the light most favorable to the verdict). Accordingly, this enumeration provides no basis for reversal.

7. Fincher contends that the jury charge as to Count 10, for aggravated assault of A. B., contained an improper opinion on the evidence. We disagree.

OCGA § 17-8-57 provides

(a) (1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.

(2) Any party who alleges a violation of paragraph (1) of this subsection shall make a timely objection and inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence. After such objection has been made, and if it is sustained, it shall be the duty of the court to give a curative instruction to the jury or declare a mistrial, if appropriate.

(b) Except as provided in subsection (c) of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties. Plain error may be considered on appeal even when

24

a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.

Fincher takes issue with the jury charge which was provided with regard to Count 10 of the indictment, wherein the trial court stated

Defendant is charged with aggravated assault in that . . . Defendant is charged that he unlawfully made an assault upon the person of [A. B.] with an object, to wit, a needle filled with a controlled substance, which when used offensively against a person is likely to result in serious bodily injury by committing an act, to wit, putting said needle into the body of [A. B.] and shooting said controlled substance into her, said act placing [A. B.] in fear of immediately receiving a violent injury . . .

The trial court further charged

A needle filled with a controlled substance, *if and when used* in making an assault upon another person, is not an object that is likely to result in serious bodily injury per se but *may or may not be an object that is likely to result in serious bodily injury* depending upon the manner in which it is used and the circumstances of the case. *You may or may not infer the serious injury* producing character of the instrument in question *from the nature and extent of the injury, if any,* afflicted upon the person allegedly attacked. Whether or not under all of the facts and circumstances of this case, *the needle filled with a controlled substance alleged in this bill of indictment* to have been used in making an assault upon the alleged victim, did in fact constitute a weapon likely to cause

25

serious bodily injury is a matter to be decided by the jury from the evidence in this case.

In deciding whether the alleged instrument was a weapon capable of causing serious bodily injury, you may consider direct proof of the character of the weapon, any exhibition of it to the jury, the evidence of the nature of any wound or absence of wound or other evidence of the capabilities of the instrument.

(Emphasis supplied.) Fincher contends the charge presupposes that the needle was, in fact, filled with a controlled substance, which was an element the State was required to prove. Fincher did not advance this objection at trial, so we review this enumeration for plain error, which requires that

[f]irst, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations, punctuation, and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

In analyzing this enumeration, it is important to remember that "OCGA § 17-8-57 is violated *only* when the trial court's instruction, considered as a whole, assumes certain things as facts and intimates to the jury what the judge believes the evidence to be[.]" (Citation and punctuation omitted; emphasis supplied.) *Martinez v. State,* 325 Ga. App. 267, 275 (3) (750 SE2d 504) (2013).

When looking at the jury charge as a whole we note that the trial court also provided the following language in the charge: "By no ruling or comment that the Court has made during the progress of the trial has the Court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence or upon the guilt or innocence of the Defendant." Reviewing the language specific to Count 10, we find that no reasonable juror could interpret it as a statement of the judge's opinion that the State had proven an element of its case. The charge is full of qualifying language such as "if and when" and "may or may not" which made clear that it was within the jury's discretion to determine if the factual predicates of the offense were established. *Goulding v. State*, 334 Ga. App. 349, 359 (4) (780 SE2d 1) (2015), disapproved on other grounds by *Quiller v. State*, 338 Ga. App. 206 (789

27

SE2d 391) (2016) ("The court in giving the charge instructed the jury that *if* it found from the evidence that Goulding made an attempt to influence a witness, the jury was permitted, in its discretion, to consider that conclusion as evidence of consciousness of guilt. By giving the charge, the trial court did not intimate an opinion about whether the evidence actually established an attempt to influence a witness, nor did the court direct the jury to consider evidence of intimidation as an indication of guilt. The charge simply instructed the jury that it had the option to consider such a finding as evidence of guilt.") (emphasis in original); see also *Collier v. State*, 288 Ga. 756, 759 (4) (707 SE2d 102) (2011) ("Contrary to Collier's argument that the charge essentially directed the jury that he is unworthy of belief since he was convicted of drug offenses, the charge states that a witness 'may be' impeached, not that he 'is' impeached, by proof of drug convictions."); *Slaton v. State*, 224 Ga. App. 422, 423 (3) (a) (480 SE2d 872) (1997) ("Because this charge merely allowed, and did not require, the jury to draw the inference, the charge was not erroneous.") Accordingly, no violation of OCGA § 17-8-57 occurred and Fincher has failed to meet the first prong of the plain error standard.

8. Lastly, Fincher contends he received ineffective assistance of trial counsel because counsel did not object to an inflammatory comment during the State's closing statement.

Georgia law is clear that

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.

*Walker v. State*, 349 Ga. App. 188, 192 (4) (825 SE2d 578) (2019).

Here, Fincher complains of his trial counsel's failure to object to the State's opening line of its closing, wherein the prosecutor stated, "Ladies and gentlemen of the jury, the Defendant is a pill-pushing, girl-pimping monster, and there's just no way to sugarcoat that. There's no girl in your community between the ages of 18 and 25 that is safe with him running around doing what you've heard about."

The State should not have made such a statement during closing because "[i]t is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence

29

phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness." *Wyatt v. State*, 267 Ga. 860, 864 (2) (b) (485 SE2d 470) (1997). Pretermitting whether it was deficient for trial counsel not to object to this improper statement,[10] Fincher's claim of ineffectiveness fails because he cannot show prejudice. This case is very similar to *Mason v. State*, 274 Ga. 79, 80–81 (1) (c) (548 SE2d 298) (2001). In *Mason*, the prosecutor stated in closing "He must be stopped. It's apparent that he's not going to do it unless you stop him. He did it in [19]89, spent four years in jail, by his own testimony. Four years later he's doing it again. He will not stop. He's in our community. Stop him before someone else in our community is Mr. Mason's victim. Please, please stop him." Id. at 80 (2), n. 2. Despite the impropriety of this comment, the Supreme Court found no ineffective assistance because it was not reasonably likely that the comment affected the outcome of the case. "[S]trong evidence of the appellant's guilt established at trial undercuts his claim that the admission of [objectionable commends during closing] affected the jury's decision, thereby resulting in prejudice." (Citation omitted.) *London v. State*, 358 Ga. App. 406, 408-409 (855 SE2d 422) (2021). As discussed more fully above

---

[10] Given that trial counsel died prior to the motion for new trial hearing, no testimony was presented as to his reason for not objecting to this statement.

in Division 2, the evidence against Fincher was strong, and we conclude he was therefore not prejudiced and this enumeration provides no basis for reversal.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Miller, P. J., and Pipkin, J., concur.*